UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
HOLLY BILLERIS,

                 Plaintiff,

   - against -

THE INCORPORATED VILLAGE OF BAYVILLE,
NEW YORK, THE BOARD OF TRUSTEES OF
THE INC. VILLAGE OF BAYVILLE, NEW YORK,
ROBERT E. DE NATALE, in his capacity as Mayor
and individually, ROBERT M. NIGRO, in his capacity as
Trustee and individually, DAVID W. WRIGHT, in his
capacity as Trustee, PATRICIA FARNELL, in her capacity as
Trustee, VALERIE M. BELCHER, in her capacity as Trustee
PETER B. VALSECCHI, in his capacity as Trustee and
individually, ELISA SANTORO, in her capacity as Trustee,
JAMES A. GOOLSBY, in his capacity as former Building
Inspector and individually, PAUL RUPP, in his capacity as
former Mayor and individually, JOSEPH RUSSO, in his
capacity as former Trustee and former Deputy Mayor
and individually, TIMOTHY CHARON, in his capacity as
former Trustee, JOHN TAYLOR, in his capacity as former
Trustee, TIMOTHY FAY, in his capacity as former Trustee,
HENRY PINKERTON, in his capacity as former Trustee, the
ZONING BOARD OF APPEALS OF THE INC. VILLAGE
OF BAYVILLE, NEW YORK, Doe Board of Trustees of the
Inc. Village of Bayville, New York, Members of the Board of
Trustees of the Inc. Village of Bayville, Members 1 through
10, Does Zoning Board of Appeals of the Inc. Village of
Bayville, New York, 1 through 5, Chairman, and Doe Zoning
Board of Appeals, Members of the Zoning Board of Appeals
of the Inc. Village of Bayville, New York, Members 1
through 20,

                 Defendants.
------------------------------------------------------------------X

**VERIFIED COMPLAINT**

Civil Action No.

     Plaintiff, Holly Billeris ("Plaintiff"), by her undersigned attorneys, Harras Bloom & Archer LLP, alleges as follows:

## NATURE OF THE ACTION

    1.    This is a civil action brought pursuant to 42 U.S.C. Section 1983, the Takings

Clause of the Fifth and Fourteenth Amendments of the United States Constitution and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

## JURISDICTION AND VENUE

2.  This Court has jurisdiction over this action pursuant to 42 U.S.C. 1983 and 28 U.S.C. Section 1331 and 1343(4). Plaintiff's claims are brought pursuant to 42 U.S.C. Section 1983, and arise under the Takings Clause of the Fifth and Fourteenth Amendments, and Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. This Court further has jurisdiction over this action under 28 U.S.C. 1343 (a) (3) and (a) (4) because Plaintiff brings this suit pursuant to 42 U.S.C. Section 1983 and seeks to redress the deprivation under color of state law of rights secured by the United States Constitution, and to recover damages and secure equitable relief under federal civil rights statues.

3.  Venue is proper in the Eastern District of New York as Plaintiff resides in Nassau County and the real property which is the subject matter of this action is located in Nassau County. Venue is also proper in this district under 28 U.S.C. Section 1391 (b) (2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this district.

## THE PARTIES

4.  Plaintiff is a natural person residing at 60 Shore Road, Bayville, New York in the County of Nassau.

5.  Upon information and belief, Defendant, the Incorporated Village of Bayville (the "Village"), is a municipal corporation organized pursuant to the laws of the State of New York.

6.  Upon information and belief, Defendant, the Board of Trustees of the Inc. Village of Bayville, New York (the "Board"), is duly created pursuant to the applicable provisions of the Village Law of the State of New York, having the authority to enact local ordinances, levy municipal taxes and conduct the affairs of the Village.

7. Defendants Robert E. DeNatale, Robert M. Nigro, David W. Wright, Patricia Farnell, Valerie M. Belcher, Peter B. Valsecchi and Elisa Santoro are all natural persons who reside in Bayville, New York and constitute the duly elected Mayor and Members of the Board of Trustees of the Village, respectively.

8. Upon information and belief, at all relevant times, Defendant, James A. Goolsby, was an official of the Village, to wit, its Building Inspector (the "Building Inspector").

9. Upon information and belief, at all relevant times, Defendant, Paul Rupp, was an official of the Village, to wit, its former Mayor and is a natural person who at all relevant times resided in Bayville, New York.

10. Upon information and belief, at all relevant times, Defendant, Joseph Russo, was an official of the Village, to wit, its former Deputy Mayor and a former Trustee and is a natural person who at all relevant times resided in Bayville, New York.

11. Upon information and belief, at all relevant times, Defendants, Timothy Charon John Taylor, Timothy Fay and Henry Pinkerton were officials of the Village, to wit, former Trustees and are natural person who at all relevant times resided in Bayville, New York.

12. Upon information and belief, Defendant, the Doe Board of Trustees of the Inc. Village of Bayville, New York, Members 1 through 10, are constitute duly elected members of the Board at all relevant time periods as set forth below.

13. Upon information and belief, Defendant, the Zoning Board of Appeals of the Inc. Village of Bayville, New York (the "ZBA"), is an administrative body charged with the responsibility of, among other things, deciding appeals from the determination of an administrative official charged with the enforcement of a local law, pursuant to Article 7 of the N.Y. Village Law and the Code of the Incorporated Village of Bayville ("Code").

14. Upon information and belief, Defendants Doe Zoning Board of Appeals of the

Inc. Village of Bayville, New York, 1 through 5, Chairman and Doe Zoning Board of Appeals, Members of the Zoning Board of Appeals of the Inc. Village of Bayville, New York, Members 1 through 20, constitute duly appointed members of the ZBA at the relevant time periods as set forth below .

## FACTS COMMON TO ALL CAUSES OF ACTION

### The Subject Property

15. Plaintiff is the owner of private property in the Village known as 60 Shore Road which is designated on the Nassau County Land and Tax Map as Section 29, Block 104, Lot 18 (the "Subject Property").

16. The Subject Property is waterfront property located adjacent to the mean high water mark of Oyster Bay/Mill Creek and is improved with a two-story single-family dwelling, which Plaintiff and her husband John Billeris had constructed at considerable cost and expense. Plaintiff and her husband reside on the Subject Property. The Subject Property is in a Residence C zoning district which provides for residential use of the property.

17. Located on the Subject Property is a private path commonly referred to as Shore Road. This private path, which is highlighted in yellow on the annexed **Exhibit A**, is hereinafter referred to as "Billeris Shore Road".[1]

18. Billeris Shore Road is located on the easterly side of the Subject Property and runs in a north/south direction. Billeris Shore Road is private property.

19. When Plaintiff and her husband initially acquired the Subject Property on or about August 30, 2007, there was no access to the Subject Property via Arlington Lane, which is located to the north of the Subject Property. They gained access to the Subject Property solely

---

[1] Certain other properties which are located adjacent to Oyster Bay/Mill Creek contain either commonly or privately owned portions of Shore Road.

4

via Godfrey Avenue to the south of the Subject Property.

20. Included in her use and enjoyment of the Subject Property was unimpeded access to the water from the Subject Property. Billeris' Shore Road was not open to the general public and was solely used by Plaintiff and her husband's vehicles and those of their invitees and other licensees.

**The Village Transforms Plaintiff's Property into a Through Street.**

21. On or about March 26, 2008, the Village made an application to the New York State Department of Environmental Conservation ("DEC") to improve a certain portion of real property immediately to the north of the Subject Property. Specifically, the Village sought to construct a 110' long by 18' wide roadway in order to effectively make Billeris' Shore Road a through street. *See* **Exhibit B**. At the time of this application, the Subject Property, including Billeris Shore Road, was inaccessible via Arlington Lane since at least 1976. *See* **Exhibit C**.

22. This application was entirely consistent with the Village's publicly expressed desire to establish Shore Road as a through street and to ensure that the public has unfettered access through Billeris' Shore Road.

23. The Village expressly confirmed this intent in Village Resolution 2008-21 which states in no uncertain terms that the Village desires to eliminate any interference with public access "so as to connect the existing paved portions of Shore Road," including Billeris' Shore Road, making it a public thoroughfare. *See* **Exhibit D**.

24. This improvement, which was performed on commonly owned property (as opposed to privately owned property), was completed by the Village as per the permit, as amended, issued by the DEC.

25. As a result of the Village's improvement, Shore Road, including Billeris Shore Road, was literally converted into a public through street, meaning that a vehicle can proceed via

5

Arlington Lane, traverse Shore Road and exit via Godfrey Avenue. Similarly, one can enter Shore Road via Godfrey Avenue and exit via Arlington Lane. *See* **Exhibit E**.

26. As further evidence of the Village's intent, on March 23, 2015, the Village, via Resolution 2015-32, adopted Proposed Local Law 2015-2, as Local Law 2-2015, which confirmed the Village's actions in making Arlington Lane a through street, at the expense of Billeris Shore Road, to Godfrey Avenue. *See* **Exhibit F**.

27. In doing so, the Village also amended Village Code Section 64-11, Subsections A and C, whereby the Village "designate[d] Arlington Lane as one of eight (8) private streets used as a through street…." *See* **Exhibit F**.

28. As a result of this activity, Billeris Shore Road became and is now open to the general public 24 hours per day, 365 days per year.

**Plaintiff Makes Application for a Fence Permit and is Denied.**

29. In an effort to secure her property from this repeated trespass by members of the general public, on or about May 13, 2013, Plaintiff[2] submitted an application for a fence permit to the Building Inspector ("First Application"). *See* **Exhibit G**.

30. It was Plaintiff's belief that she was entitled to the fence permit as a matter of right under the applicable zoning code and based upon all the other comparable private property owners in the Village as well as the Court of Appeals' decision in *Marchand v. Village of Bayville*, 19 N.Y.3d 616 (2012), a case in which the Village fully participated in.

31. By way of this application, Plaintiff sought a permit to erect two fences over Shore Road at the northern and southern boundaries of the Property. These fences would have twelve-foot wide crash gates that would allow clearance across Shore Road "for emergency

---

2 Plaintiff authorized her husband John Billeris to make the application on her behalf as her duly authorized agent and the Village did not object to this.

6

equipment, only . . . should emergency access be needed." *See* **Exhibit G**.

32. By letter dated June 12, 2013, the Building Inspector informed Plaintiff that her fence permit application was denied. *See* **Exhibit H**. In this denial, the Village completely ignored the Court of Appeals decision in *Marchand v. Village of Bayville*, 19 N.Y.3d 616 (2012), which confirmed another Shore Road property owner's ability to close off their section of private Shore Road to the general public. *See* **Exhibit I**.

33. The Village was a party to the *Marchand* action and fully participated in it from the trial court level to Court of Appeal's decision. Instead, and in an obvious effort to undermine Plaintiff's property rights, the Village stated that it was bound by a separate and previous 2008 decision in the Nassau County Supreme Court matter entitled *Viteritti v. Village of Bayville* which concerned the alleged nuisance impact of the placement of permanent boulders on a separate parcel of commonly owned property with a path. Plaintiff nor her husband were parties to that litigation, which was never appealed.

34. On June 17, 2013, Plaintiff sent a letter to the Building Inspector which made it clear that she was not requesting a permit to build a permanent and impassable barrier over Billeris Shore Road as <u>*Viteritti*</u> had done, but that she was instead seeking to build two fences with "crash gates" through which emergency vehicles could enter and exit. <u>See</u> Exhibit C. Plaintiff also explained that, after the <u>*Viteritti*</u> decision, other property owners had closed off access to the portions of Shore Road that they privately owned and that the Village did not object. *See* **Exhibit J**.

35. On July 9, 2013, Plaintiff resubmitted her application for a fence permit ("Second Application"). This time, Plaintiff requested permission to erect a structure identical to any one of certain other structures that the Village permitted other property owners to build over the private roads that they owned. The examples cited by Plaintiff included the structures which

7

were built over: (1) the portion of Shore Road that runs through the property located at 7 Wansor Street; (2) 100 Shore Road which is the property that was the subject matter of the *Marchand* Court of Appeals decision; (3) Washington Avenue; (4) Franklyn Street; (5) the private street, known as "the Boulevard", between Adams and Jefferson Streets; (6) "the Boulevard" between Madison and Monroe Streets; (7) "the Boulevard" between Monroe and Quincy Streets; and (8) Oak Point Drive North. *See* **Exhibit K.**

36. On July 12, 2013, the Building Inspector informed Plaintiff by letter that her resubmitted fence permit application was again denied. *See* **Exhibit L.**

**Plaintiff Appeals the Denial of the Fence Permit Application to the ZBA.**

37. On August 9, 2013, Plaintiff submitted an appeal of the Building Inspector's determination to the ZBA, in which she requested "reversal of the Building Department's denial of a fence permit" because "[w]ithout the fence, it is impossible for applicant to prevent the public at large from trespassing upon her property." *See* **Exhibit M**.

38. Plaintiff utilized the ZBA's "Variance Application" form in requesting review of the Building Inspector's decision because the Village does not offer any other more appropriate form for seeking review of the Building Inspector's decision in this regard. Nonetheless, Plaintiff made it clear that "[t]his application seeks to reverse the building inspector's determination denying applicant a fence permit which applicant is entitled to as of right. However, to facilitate application, applicant will fill out the questions for "area variance as an aid to the Board". *See* **Exhibit M, p. 4.**

39. Thereafter, the Village issued a public notice ("Notice") which provided that the ZBA would indeed hold a hearing on September 25, 2013 to consider Plaintiff's application to construct fences "that will create a barricade across and impede public access to [Billeris'] Shore Road." The Notice also represented that Plaintiff had requested certain variances pursuant to

Chapter 80, Article XIII, Section 80-61 of the Code, which was not true. *See* **Exhibit N**.

40. On September 10, 2013, counsel for Plaintiff wrote to the Clerk of the ZBA and informed her that: (1) the ZBA's description of Plaintiff-Petitioner' request was inflammatory and prejudicial to her; and (2) in any event, Plaintiff was not seeking a variance but was challenging the previous determinations of the Building Inspector pursuant to N.Y. Vill. Law § 7-712-a(4); to wit, the denial of her fence application which she believed she was entitled to as of right. *See* **Exhibit O**.

41. On September 13, 2013, then Village Attorney, Dominic Bianco ("Village Attorney"), wrote to counsel for Plaintiff and advised that the hearing scheduled for September 25, 2013 had been unilaterally cancelled by the Village and would not proceed. *See* **Exhibit P**.

42. On September 16, 2013, counsel for Plaintiff wrote to the Village Attorney in response to his September 13th letter and questioned why the public hearing had been cancelled.[3] Counsel further demanded that a public hearing be re-scheduled and a proper non-inflammatory public notice be issued. *See* **Exhibit Q.**

43. On September 16, 2013 the Village Attorney replied to counsel for Plaintiff and stated: "rest assured that the propriety of the building inspector's decision is not being questioned" [by the Village]. *See* **Exhibit R**.

44. On September 19, 2013, Plaintiff's counsel replied to the Village Attorney's September 16th letter and questioned what the Village Attorney had meant when he stated that "the propriety of the building inspector's determination [was] not being questioned" because "the simple fact of the matter is that my client is challenging the building inspector's denial of her fence permit application." *See* **Exhibit S**.

---

[3] As a result of a typographical error, this letter is dated September 17, 2013 although it was sent to and received by the Village Attorney on September 16, 2013 as he acknowledged in his letter of the same date. See Exhibit K.

9

45. On September 20, 2013, the Village Attorney sent a letter to Plaintiff Counsel which once again denied Plaintiff her right to a hearing before the zoning board. *See* **Exhibit T**.

46. It cannot be understated that, during this time and continuing to date, barricades of varying types have been erected and maintained across nearly <u>all</u> privately owned streets in the Village. The Village has taken no action to remove these barriers, some of which have been constructed without permits, nor have they objected to their construction and maintenance.

**Plaintiff's State Court Action and the United States Supreme Court's Decision in *Knick*.**

47. In accordance with the United States Supreme Court decision *in Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City,* 473 U.S. 172 (1985), on or about October 15, 2013, Plaintiff commenced an action/proceeding in the Supreme Court of the State of New York, County of Nassau ("State Court Action"). The State Court Action, *inter alia,* sought a CPLR Article 78 review of the Village's actions as well as damages for deprivation of her property rights in violation of the New York State Constitution, including claims for inverse condemnation.

48. The Village's conduct during these actions/proceedings is tantamount to bad faith. The Village made repeated motions to dismiss in which the Village manufactured outright and egregious misrepresentations to the Court regarding the operative statute of limitations, costing Plaintiff thousands of dollars in legal fees defeating these baseless defenses, and wasted months and months of time in baseless motion practice.

49. Moreover, Plaintiff entered into lengthy negotiations with the Village in the State Court Action. The framework for resolution of this matter was the payment by the Village to Plaintiff of a sum to compensate her for her damages. After spending additional and substantial legal fees and costs in this regard, the Village offered no monetary compensation. It was clear

10

that the Village was only seeking to delay the matter and compel Plaintiff to incur needless legal fees.

50. The Court in the State Court Action determined that the Village was within its rights to deny the fence permit application. The Court also determined that Plaintiff has stated a viable claim for Inverse Condemnation under State Law.

51. Throughout the State Court Action, the Village consistently maintained that it denied the fence permit application so the public at large could freely traverse Billeris Shore Road.

52. This Action is now being commenced and is timely pursuant to the United States Supreme Court's decision in *Knick v. Township of Scott,* 139 S.Ct. 2162 (2019).

## AS AND FOR A FIRST CAUSE OF ACTION
### (Constitutional Taking)

53. Plaintiff repeats and reiterates each and every allegation set forth in paragraphs "1" through "52" hereof, as if same were fully set forth herein.

54. To state a takings claim under section 1983, a plaintiff must show "(1) a property interest (2) that has been taken under color of state law (3) without just compensation."

55. Plaintiff is the owner of Billeris Shore Road.

56. The Defendants have committed a *de facto* taking insofar as the acts of the Village, including the ZBA, the Building Inspector, the Mayor and Board of Trustees in denying Plaintiff a fence permit, which denial was for the express purpose of allowing the general public at large to utilize Billeris Shore Road as part of its public thoroughfare.

57. As a result of this legal restraint, Plaintiff's private property has been effectively condemned by the Village.

58. As a result of this legal restraint, automobile and foot traffic freely traverse the

private roadway that Plaintiff owns, which will cause her to incur expenses for the maintenance of the roadway that she would not otherwise sustain.

59. Relatedly, Plaintiff may be exposed to liability because she is unable to exclude trespassers from her land.

60. Plaintiff's ability to exercise her riparian rights of access to and use of the portion of Oyster Bay/Mill Neck Creek that fronts the Property to the north of Shore Road is likewise infringed by the presence of traffic.

61. Moreover, the private character of the Plaintiff's portion of Shore Road is effectively destroyed by the imposition of this legal restraint. The overall value of Plaintiff's property has been substantially diminished as a result.

62. Notwithstanding the Defendants' united action which has deprived Plaintiff of her property rights, she continues to pay real estate taxes for Billeris Shore Road.

63. Plaintiff has received no compensation for this taking.

64. As a result of the foregoing, Plaintiff has been damaged in an amount to be determined at trial but believed to be no less than $750,000.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Violation of Equal Protection Clause of the 14th Amendment)

65. Plaintiff repeats and reiterates each and every allegation set forth in paragraphs "1" through "64" hereof, as if same were fully set forth herein.

66. Section 1 of the Fourteenth Amendment to the United States Constitution provides in pertinent part: "No state shall…deny any person within its jurisdiction to the equal protection of the laws."

67. Plaintiff was denied an application to erect fences on the southern and northern property lines adjacent to Billeris Shore Road.

68. Plaintiff has been treated differently than other residents of the Village who are similarly situated and have been allowed to erect and maintain barriers over private roads with the knowledge and acquiescence of the Village.

69. Examples of this disparate treatment are as follows: (1) the portion of Shore Road that runs through the property located at 7 Wansor Street; (2) 100 Shore Road; (3) Washington Avenue; (4) Franklyn Street; (5) the private street, known as "the Boulevard", between Adams and Jefferson Streets; (6) "the Boulevard" between Madison and Monroe Streets; (7) "the Boulevard" between Monroe and Quincy Streets; and (8) Oak Point Drive North.

70. There is no rational basis for this disparate treatment.

71. The Defendants' conduct is in bad faith in that it has turned Billeris Shore Road into a public thoroughfare without taking the responsibility for the road through the eminent domain process.

72. As a result of the foregoing, Plaintiff has been damaged in an amount to be determined at trial but believed to be no less than $750,000.

**WHEREFORE**, Plaintiff is entitled to a judgment against Defendants on each of the foregoing causes of action as follows:

(a) On the First Cause of Action, damages in an amount to be determined at trial but believed to be no less than $750,000, together with interest thereon;

(b) On the Second Cause of Action, damages in an amount to be determined at trial but believed to be no less than $750,000, together with interest thereon;

(c) Costs and disbursements of this action;

(d) Awarding Plaintiff her reasonable attorneys' fees pursuant to statute; and

(e) Awarding Plaintiff such other and further relief as this Court deems just, proper and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Holly Billeris demands trial by jury in this action of all issues so triable.

Dated: Melville, New York
July 22, 2020

          HARRAS BLOOM & ARCHER, LLP
          *Attorneys for Plaintiff*

By: */s/ Linda S. Agnew*
    LINDA S. AGNEW
    TARA D. MCDEVITT
    445 Broad Hollow Road
    Suite 127
    Melville, New York 11747
    (631) 393-6220

## VERIFICATION

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF SUFFOLK    )

**HOLLY BILLERIS**, being duly sworn says:  I am the Plaintiff in the action herein; I have read the annexed **VERIFIED COMPLAINT**, know the contents thereof and the same are true to my knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters I believe them to be true.

_____
HOLLY BILLERIS

Sworn to before me this
22nd day of July, 2020

_____
Notary Public

CARA LEE MCNAMARA
Notary Public, State of New York
No. 4996282
Qualified in Suffolk County
Commission Expires May 11, 2022

15