UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

HOLLY BILLERIS,

                       Plaintiff,

          v.

THE INCORPORATED VILLAGE OF
BAYVILLE, NEW YORK, *et al.*,

                   Defendants.

**MEMORANDUM & ORDER**
20-CV-03298 (HG) (ST)

**HECTOR GONZALEZ**, United States District Judge:

      Plaintiff brought this case challenging land use-related actions taken by the Incorporated

Village of Bayville (the "Village") and its officials.  A district judge who previously presided

over the case stayed the case in deference to state court litigation between Plaintiff and the

Village, which Plaintiff commenced several years before filing this case.  This order addresses

Plaintiff's motion to terminate that stay, *see* ECF No. 38, and Defendants' motion to dismiss

Plaintiff's claims, *see* ECF No. 37.  For the reasons set forth below, the Court terminates the

stay, but dismisses Plaintiff's claims as barred by the statute of limitations and because some of

Plaintiff's claims also fail on the merits.

**FACTUAL BACKGROUND**

      Plaintiff asserts that Defendants violated her rights under the Takings Clause of the Fifth

Amendment and the Equal Protection Clause of the Fourteenth Amendment while acting under

the color of state law and therefore violated her rights under 42 U.S.C. § 1983.  *See* ECF No. 1

¶¶ 1–2, 53–72.  Plaintiff alleges that the property where her home is located includes a portion of

a "private path" known as "Shore Road."  *Id.* ¶ 17.  Prior to 2008, one end of Shore Road was

connected to a public street in the Village, but the other end was not.  *Id.* ¶ 19.  In 2008,

however, the Village began a process of making improvements to a public road on the other end of Shore Road, thereby connecting Shore Road to public roads on both ends, which Plaintiff alleges converted her previously "private path" into a "public thoroughfare." *Id.* ¶¶ 15–28.

Plaintiff made two separate applications in 2013 to the Village's building inspector to erect fences blocking the portion of Shore Road that lies on her property, which Plaintiff alleges that similarly situated property owners had done. *Id.* ¶¶ 29–31, 35. Plaintiff's proposed fences would have included "crash gates," which Plaintiff insists would have permitted emergency vehicles to travel on Shore Road if necessary. *Id.* ¶ 31. The building inspector denied both applications, explaining that obstructing passage on Shore Road would create "a substantial interference with the health and safety of residents south of the barricade." *Id.* ¶¶ 32–36; ECF No. 1-8 at 2; ECF No. 1-12 at 2. The building inspector cited a prior decision by the Nassau County Supreme Court that had declared a barrier erected by one of Plaintiff's neighbors on Shore Road to be a "public nuisance" for that same reason. ECF No. 1-8 at 2.

Plaintiff appealed the building inspector's denials to the Village's Zoning Board of Appeals (the "Board of Appeals"). ECF No. 1 ¶¶ 32, 36–37. She alleges that the Board of Appeals initially scheduled a hearing on her appeal but later cancelled that hearing and denied the appeal. *Id.* ¶¶ 38–45. Plaintiff claims that, "during this time, and continuing to date, barricades of varying types have been erected and maintained across nearly <u>all</u> privately owned streets in the Village," and that "[t]he Village has taken no action to remove these barriers, some of which have been constructed without permits, nor have they objected to their construction and maintenance." *Id.* ¶ 46 (emphasis in original). Specifically, Plaintiff alleges that the owners of eight other properties in the Village that include private roads have built barriers obstructing

2

those roads, and she has attached photographs of those properties to her complaint. *Id.* ¶¶ 35, 69; ECF No. 1-11.

Plaintiff alleges that the Village's act of connecting Shore Road to public streets on both ends, coupled with the Village's later denial of her applications to build a fence across her portion of Shore Road, have amount to an uncompensated taking of her property in violation of the Fifth Amendment because members of the public now use her private road as a through street. ECF No. 1 ¶¶ 53–64. Plaintiff also asserts an equal protection violation based on the Village's denial of her applications to build a fence because the Village has allegedly permitted other residents to build allegedly similar obstructions across private roads. *Id.* ¶¶ 65–72.

Plaintiff asserts her claims against the Village itself, the Village's Board of Trustees, and the Board of Appeals. *Id.* ¶¶ 5–6, 13–14. The Board of Trustees is responsible for "enact[ing] local ordinances" on behalf of the Village, among other responsibilities. *Id.* ¶ 6. The Board of Appeals is responsible for hearing appeals of administrative decisions related to various land use issues. *Id.* ¶ 13. Plaintiff also asserts her claims against various individuals associated with the Village, including the building inspector, James Goolsby, and two former mayors of the Village, Robert De Natale and Paul Rupp. *Id.* ¶¶ 7–9. The remaining individual Defendants named in the complaint are current and former members of the Board of Trustees. *Id.* ¶¶ 7, 10–11. Plaintiff also purports to assert claims against other, unidentified members of the Board of Trustees, whom she has named in her complaint as "Doe" Defendants, and she has purported to do the same for unidentified members of the Board of Appeals. *Id.* ¶¶ 12–14.

## PROCEDURAL HISTORY

In October 2013, before filing this lawsuit, Plaintiff filed a lawsuit against the Village, the Board of Appeals, and the Village's building inspector in New York Supreme Court, Nassau

County, asserting claims under Article 78 of New York's Civil Practice Law and Rules.  ECF

No. 1 ¶ 47.  At that time, the law required her to do so because the U.S. Supreme Court had held

that a plaintiff could not assert a takings claim in federal court under Section 1983 without first

satisfying two requirements.  *Williamson Cty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson

City*, 473 U.S. 172, 186, 195 (1985).  The first requirement prohibited a plaintiff from

challenging land use regulations in federal court without first receiving from the government

entity that imposed the regulations "a final decision regarding the application of the regulations

to the property at issue."  *Id.* at 186.[1]  The second requirement was that a plaintiff had to pursue

any "adequate procedure for seeking just compensation" made available in state court.  *Id.* at

195.  In June 2019, however, the Supreme Court expressly overruled *Williamson County's*

second requirement and held that "[a] property owner may bring a takings claim under § 1983

upon the taking of his property without just compensation by a local government" without first

pursuing relief under state law in state court.  *Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2179

(2019).  The plaintiff in *Knick* did not, however, challenge *Williamson County's* first

requirement, known as the "finality requirement," and that requirement therefore continues to

apply to Plaintiff's claims.  *Id.* at 2169.

When the Supreme Court's decision in *Knick* was published, Plaintiff had a motion for

summary judgment pending in her state court case, and the state court defendants had made a

cross-motion for summary judgment.  *See Billeris v. Inc. Vill. of Bayville*, No. 12521/2013 (Sup.

Ct. Nassau Cty.) (NYSCEF No. 1).[2]  Those motions had been pending since January 2019,

---

[1]     Unless noted, case law quotations in this order accept all alterations and omit internal
quotation marks, citations, and footnotes.

[2]     The Court may take judicial notice of dockets from other courts' proceedings because
they are public records, including when deciding whether to dismiss a complaint.  *See
Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006).

before the *Knick* decision.  *Id.*  In March 2020, the state court decided those motions, denying

them both.  ECF No. 37-5.  Plaintiff and the defendants each filed notices of appeal of that

decision to the Appellate Division, Second Department on May 4 and 19, 2020, respectively.

*See Billeris v. Inc. Vill. of Bayville*, No. 12521/2013 (Sup. Ct. Nassau Cty.) (NYSCEF Nos. 3, 4).

Plaintiff did not commence this case in federal court until approximately two months later, in

July 2020, more than a year after *Knick* had been decided.  *See* ECF No. 1.  Although the parties

perfected their state court appeal by filing their full set of appellate briefs more than two years

ago, the Second Department has not yet decided the appeal.  *Billeris v. Inc. Vill. of Bayville*, No.

2020/6009 (2d Dep't.).  Since Plaintiff represents that no argument date has been set, it is unclear

when the Second Department will reach a decision.  *See* ECF No. 40.

Defendants responded to Plaintiff's commencing this case by filing a motion seeking to

"dismiss or stay" Plaintiff's claims, arguing that Plaintiff's claims against the individual

Defendants failed on the merits and that the Court was either required to dismiss or permitted to

abstain from deciding all of Plaintiff's claims.  *See* ECF No. 13-9.  In making this latter

argument, Defendants relied on the abstention doctrine established in *Colorado River Water*

*Conservation Dist. v. United States*, 424 U.S. 800 (1976), which permits federal courts to abstain

from hearing claims in deference to simultaneously pending state court litigation under certain

circumstances.  ECF No. 13-9 at 13–14.  Judge Feuerstein, who previously presided over this

case, decided Defendants' motion during a conference that was not transcribed.  ECF No. 25.

She memorialized her decision in a one-line order that said, "Case is c[l]osed with leave to

restore on ten (10) days notice in no event later than 11/18/2021."  *Id.*  The Court believes that

Judge Feuerstein intended, through that order, to grant Defendants' motion to stay the case but

not to dismiss any of Plaintiff's claims on the merits, or else there would have been no reason to permit Plaintiff to "restore" the case.  *See id.*

Plaintiff moved for reconsideration of Judge Feuerstein's order.  ECF No. 26.  While that motion was pending, however, the case was reassigned to Judge Azrack following Judge Feuerstein's death.  Judge Azrack entered the following text order granting Plaintiff's motion for reconsideration:  "The November 18, 2020 minute entry states that this case 'is closed with leave to restore on ten (10) days notice in no event later than 11/18/2021.'  That order is vacated.  The Clerk of Court is directed to re-open this case.  The parties are directed to provide a status report on the related state court litigation by 9/1/2021."  *See* ECF Order dated Aug. 12, 2021.  The Court interprets Judge Azrack's order as maintaining the stay ordered by Judge Feuerstein because asking for a status report about the state court litigation would otherwise have been unnecessary.  However, Judge Azrack's order accurately conveyed that the remedy of "clos[ing]" the case was an improper method of implementing the stay because Plaintiff's federal lawsuit asserts different claims, including claims against additional defendants, that will not be decided in the state court litigation.  *See id.*; *see also* ECF No. 14-10 at 10.  Although Plaintiff asserts that Judge Azrack's order has already terminated the stay, *see* ECF No. 40, Plaintiff's interpretation is belied by the fact that, in the ensuing nine months before the case was reassigned to this Court, neither Judge Azrack nor the assigned magistrate judge took any action related to the case.

In October 2022, after this case had been stayed for nearly two years, Plaintiff filed a letter inquiring about the status of the case and requesting that the Court permit the case to proceed to active litigation.  ECF No. 35.  In response, the Court ordered the parties to submit briefing addressing whether continuing to stay this case pursuant to *Colorado River* was

6

appropriate in light of the unusually protracted nature of the parties' state court litigation.  ECF No. 36.  The Court also requested that the parties address the application of the statute of limitations to Plaintiff's claims, whether Plaintiff had adequately alleged an equal protection violation, and whether Plaintiff's claims against Defendants other than the Village could succeed on the merits.  *Id.*  The parties complied with the Court's order, *see* ECF Nos. 37–38, and Plaintiff recently filed another letter reiterating her request that the Court terminate the stay of this case, *see* ECF No. 40.

## LEGAL STANDARD

A complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Although all allegations contained in a complaint are assumed to be true, this tenet is "inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint," along with any document for which "the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint."  *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021).  Courts are also "permitted to consider matters of which judicial notice may be taken."  *Simmons v. Trans Express Inc.*, 16 F.4th 357, 360 (2d Cir. 2021).

**DISCUSSION**

As an initial matter, the Court finds that it is inappropriate to continue to stay this case

pursuant to the *Colorado River* abstention doctrine.  However, after terminating the current stay,

the Court concludes that Plaintiff's claims must be dismissed.  Plaintiff's takings claim is barred

by the statute of limitations, and, even after considering the intervening change in law created by

*Knick*, Plaintiff is not entitled to equitable tolling of the statute of limitations.  Plaintiff's equal

protection claim is also barred by the statute of limitations and further fails on the merits because

Plaintiff's complaint does not allege sufficiently similar comparable properties to state a class-of-

one equal protection claim.  Finally, even if each of Plaintiff's claims did not fail in their

entirety, Plaintiff's claims against the individual Defendants would fail because they are entitled

to immunity and because Plaintiff has not adequately alleged that some of the individual

Defendants personally participated in the Village's alleged constitutional violations.

## I.     The Court Will No Longer Stay Consideration of Plaintiff's Claims

Although Judge Feuerstein's order staying this case did not explain the basis for the stay

that she imposed, *see* ECF No. 25, Defendants' papers filed in advance of her order argued for

*Colorado River* abstention, *see* ECF No. 13-9 at 13–14.  The Court therefore infers that Judge

Feuerstein relied on *Colorado River* as the basis for her stay.  Additionally, Defendants, in

response to the Court's order soliciting briefing on the issue, have not relied on any abstention

doctrine other than *Colorado River* to support their argument for continuing the stay.  ECF No.

37 at 5–11.  After weighing the *Colorado River* factors, particularly in light of the multi-year

delay in the parties' state court litigation, the Court concludes that continuing to stay this case is

not appropriate.

To begin its *Colorado River* abstention analysis, the Court must "make a threshold

determination" that this lawsuit and Plaintiff's state court lawsuit against the Village "are

parallel." *Mochary v. Bergstein*, 42 F.4th 80, 85 (2d Cir. 2022). "Suits are parallel when

substantially the same parties are contemporaneously litigating substantially the same issue in

another forum." *Id.* Only after concluding that the two proceedings are parallel may the Court

proceed to consider the following six factors:

> (1) whether the controversy involves a res over which one of the
> courts has assumed jurisdiction; (2) whether the federal forum is
> less inconvenient than the other for the parties; (3) whether staying
> or dismissing the federal action will avoid piecemeal litigation; (4)
> the order in which the actions were filed, and whether proceedings
> have advanced more in one forum than in the other; (5) whether
> federal law provides the rule of decision; and (6) whether the state
> procedures are adequate to protect the plaintiff's federal rights.

*Id.* If the Court concludes that "any such factor is facially neutral, that is a basis for retaining

jurisdiction, not for yielding it." *LeChase Constr. Servs, LLC v. Argonaut Ins. Co.*, 63 F.4th 160,

173 (2d Cir. 2023). No specific factor "is necessarily determinative," and the Court should not

simply compare the number of factors that favor abstention against the number of factors that

favor proceeding with the case in federal court, as though the Court were applying "a mechanical

checklist." *Mochary*, 42 F.4th at 85. Finally, when weighing the factors, the Court must be

mindful of the Supreme Court's instruction that federal courts have a "virtually unflagging

obligation . . . to exercise the jurisdiction given them," *Colo. River*, 424 U.S. at 817, and the

Second Circuit's corresponding "insiste[nce] on a heavy presumption against abstention from the

exercise of federal jurisdiction," *LeChase*, 63 F.4th at 173.

This lawsuit is parallel to Plaintiff's state court lawsuit against the town because both

lawsuits have a common plaintiff, share three common defendants, and revolve around the same

property. Multiple courts within the Second Circuit, when deciding whether to stay federal

litigation raising takings claims involving the same property that was the subject of pending

litigation in state court, have concluded that the federal and state litigation were parallel.

9

*Highview Props. D.H.F. Inc. v. Town of Monroe*, 606 F. Supp. 3d 5, 30 (S.D.N.Y. 2022)

(deciding to abstain); *Vill. Green at Sayville, LLC v. Town of Islip*, No. 17-cv-7391, 2019 WL

4737054, at *10 (E.D.N.Y. Sept. 27, 2019) (deciding not to abstain), *vacated on other grounds*,

43 F.4th 287 (2d Cir. 2022).  It does not matter that Plaintiff has brought an equal protection

claim that she did not include in the state court lawsuit, named additional individuals as

defendants, or sought money damages not available through state remedies since "*Colorado

River* does not require that the federal and state suits be identical in every aspect." *Highview*,

606 F. Supp. 3d at 30 (rejecting similar arguments).

 Several of the *Colorado River* factors either counsel against abstention or are neutral.

Plaintiff and Defendants agree that even though both lawsuits revolve around the same property,

neither court has exercised *in rem* jurisdiction over Plaintiff's property.  ECF No. 37 at 7; ECF

No. 38 at 12.  Litigating in this District will also be approximately as convenient for the parties

as litigating in Nassau County Supreme Court.  But most importantly, Plaintiff has asserted a

federal cause of action, Section 1983, to enforce rights guaranteed by the U.S. Constitution.  As

the Second Circuit has explained, "[w]hen the applicable substantive law is federal, abstention is

disfavored." *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673

F.3d 84, 102 (2d Cir. 2012).

 The remaining factors counsel in favor of abstention at least somewhat.  The state court

litigation was filed first and is more advanced than this case since summary judgment motions

have already been decided, whereas Defendants here have not even filed an answer because

Judge Feuerstein stayed the case so early in the proceedings.  On the other hand, the parties'

appeals of the state court's summary judgment decision have been pending in the Appellate

Division for nearly three-and-a-half years with no indication as to when the appeal will be

argued or decided, which suggests that the state court litigation might not be decided faster than this case, even though it is farther along.  Other than the state courts' delay, Plaintiff has "provide[d] no reason whatsoever for this Court to doubt whether the state procedures are adequate to protect [her] federal rights."  *Highview*, 606 F. Supp. 3d at 31.  As Defendants point out, Plaintiff could have asserted her Section 1983 claims in state court since state courts and federal courts have concurrent jurisdiction over such claims, and state courts are required to exercise that jurisdiction.  *See Haywood v. Drown*, 556 U.S. 729, 735–36 (2009).

The most compelling factor in favor of abstention is avoiding duplicative litigation, particularly related to Plaintiff's takings claim.  The Supreme Court has held that takings claims litigated in state court result in preclusive judgments that are binding on federal courts if plaintiffs attempt to assert a takings claim, through Section 1983, in a subsequent federal lawsuit. *See San Remo Hotel, L.P. v. City & Cty. of San Francisco*, 545 U.S. 323, 345–47 (2005).  The Second Circuit has confirmed that this preclusive effect continues even after the Supreme Court's decision in *Knick*.  *Morabito v. New York*, 803 F. App'x 463, 468 (2d Cir. 2020);[3] *see also Stensrud v. Rochester Genesee Reg'l Transp. Auth.*, No. 19-cv-6753, 2023 WL 2941418, at *6 (W.D.N.Y. Apr. 14, 2023) (relying on *Morabito* to give preclusive effect to state court judgment and explaining that "*Knick* did not disturb the well-established rules regarding the preclusive effect of state court judgments in § 1983 actions").  If Plaintiff's state court lawsuit,

---

[3]       Although the Second Circuit reached this conclusion in a non-precedential decision, no new precedent was required simply to confirm that the Supreme Court's decision in *San Remo* remains in effect.  Moreover, Courts of Appeals in multiple other Circuits have reached the same conclusion.  *See Tejas Motel, L.L.C. v. City of Mesquite*, 63 F.4th 323, 334 (5th Cir. 2023) (holding that "nothing in *Knick* nullifies long-settled principles of res judicata"); *Ocean Palm Golf Club P'ship v. City of Flagler Beach*, 861 F. App'x 368, 371 (11th Cir. 2021) (holding that "[t]he *Knick* Court did not overrule or otherwise modify its precedent" regarding res judicata).

which already has a significant head start relative to this case, reaches a final judgment, this Court will all but certainly be bound by that judgment's disposition of Plaintiff's takings claim.

After weighing the factors, the Court concludes that terminating the stay in this case is the appropriate course. Although the preclusive effect of a state court judgment on Plaintiff's takings claim risks creating significant inefficiencies, Plaintiff's assertion of federal causes of action, coupled with the Supreme Court's and Second Circuit's strong admonishments against abstention, tip the balance in favor of allowing Plaintiff to proceed with her claims in this Court.

## II.    The Statute of Limitations Bars Plaintiff's Takings Claim

The statute of limitations for a Section 1983 claim is determined by state law, but federal law governs when a Section 1983 claim accrues—*i.e.*, when the statute of limitations begins to run. *Barnes v. City of New York*, 68 F.4th 123, 127 (2d Cir. 2023); *see also Reed v. Goertz*, 598 U.S. 230, 235 (2023) (stating that the question of when the "limitations period began to run" for Section 1983 procedural due process claim was "one of federal law"). "[I]n New York, the statute of limitations for Section 1983 claims is New York's general statute of limitations for personal injury actions, N.Y. C.P.L.R. § 214(5), which is three years." *Kane v. Mount Pleasant Cent. Sch. Dist*, No. 21-2995-cv, 2023 WL 5281533, at *4 (2d Cir. Aug. 17, 2023) (dismissing Section 1983 claims based on alleged Title IX violations as barred by the statute of limitations); *see also Sherman v. Town of Chester*, 752 F.3d 554, 566 (2d Cir. 2014) (applying same three-year statute of limitations to takings claims). "[C]laims brought under [Section] 1983 . . . typically accrue when the plaintiff knows or has reason to know of the injury which is the basis of h[er] action." *Barnes*, 68 F.4th at 127. "[A] plaintiff's knowledge is sufficient to trigger accrual when [she] know[s] enough of the critical facts of injury and causation to protect [her]self by seeking legal advice." *Abdel-Fakhara v. Vermont*, No. 22-2543-cv, 2023 WL 3486236, at *1 (2d Cir. May 17, 2023) (affirming dismissal of takings claim).

Plaintiff's takings claim accrued when the Village allegedly deprived her of her property, not when the Supreme Court authorized her to bring her takings claim in federal court.  The Supreme Court in *Knick* held "that a government violates the Takings Clause when it takes property without compensation, and that a property owner may bring a Fifth Amendment claim under § 1983 at that time." *Knick*, 139 S. Ct. at 2177.  "Stated differently, the running of the statute of limitations for a takings claim begins when a plaintiff knows or has reason to know that the government took his or her property without just compensation." *Stensrud v. Rochester Genesee Reg'l Transp. Auth.*, 507 F. Supp. 3d 444, 450 (W.D.N.Y. 2020) (applying *Knick* to determine when takings claim accrued).  Plaintiff's takings claim, therefore, accrued in 2013, at the latest, when the Board of Appeals denied Plaintiff permission to construct a fence that would have maintained her purported right to exclude members of the public from accessing Shore Road. *Id.* (reaching same conclusion that Section 1983 takings claim, despite being prohibited in federal court prior to *Knick*, accrued before the decision in *Knick*); *see also Honchariw v. Cty. of Stanislaus*, 530 F. Supp. 3d 939, 947–49 (E.D. Cal. 2021), *aff'd*, No. 21-15801-cv, 2022 WL 522287, at *1–2 (9th Cir. Feb. 22, 2022) (applying rule articulated in *Knick* to hold that plaintiff's takings claim accrued years before *Knick* was decided).

The statute of limitations for a Section 1983 claim may be equitably tolled, but such tolling applies "only in rare and exceptional circumstances." *Jones v. City of New York*, 846 F. App'x 22, 24 (2d Cir. 2021) (affirming denial of equitable tolling for Section 1983 claims). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements:  (1) that [s]he has been pursuing h[er] rights diligently, and (2) that some extraordinary circumstance stood in h[er] way." *Smalls v. Collins*, 10 F.4th 117, 145 (2d Cir. 2021) (affirming denial of equitable tolling for Section 1983 claim).  A plaintiff must demonstrate not only that an

13

extraordinary circumstance existed, but also "must further demonstrate that those circumstances caused h[er] to miss the original filing deadline." *Id.* Even if a plaintiff demonstrates extraordinary circumstances prevented her timely filing, she is "required to show reasonable diligence in pursuing h[er] claim throughout the period [s]he seeks to have tolled." *Id.* "Granting equitable tolling is a discretionary exercise of a court's equity powers," and if the "two elements" of extraordinary circumstances and reasonable diligence "are missing," "[t]he law prohibits a judge from exercising her discretion" to apply equitable tolling. *Doe v. United States*, 76 F.4th 64, 71 (2d Cir. 2023) (remanding for further consideration about whether equitable tolling should apply to plaintiff's *Bivens* and Federal Tort Claims Act claims).

The Court has no reservation in concluding that the Supreme Court's decision in *Williamson County*, which prohibited Plaintiff from filing her takings claim in federal court prior to the Supreme Court's decision in *Knick*, represents an extraordinary circumstance. *Stensrud*, 507 F. Supp. 3d at 454 (reaching same conclusion); *see also Fonvil v. Cty. of Rockland*, No. 17-cv-2957, 2018 WL 357309, at *4 (S.D.N.Y. Jan. 9, 2018) (explaining that Supreme Court overruling Second Circuit precedent supported equitable tolling but finding that lack of diligence after change of law precluded tolling). Prior to *Knick*, if Plaintiff had attempted to file her takings claim in this Court before litigating her state law claims to conclusion, her claims would have been dismissed.

Plaintiff has failed, however, to demonstrate that she acted with reasonable diligence once *Knick* removed the extraordinary circumstances that had previously prevented her from filing this lawsuit. Plaintiff waited more than a year between the Supreme Court's decision in *Knick* and her filing of this case, in sharp contrast to the plaintiffs in the *Stensrud* case on which Plaintiff relies to argue for equitable tolling. *See* ECF No. 38 at 25. The plaintiffs in *Stensrud*

14

filed their claims in federal court "approximately three months after the Supreme Court's issuance of *Knick*." *Stensrud*, 507 F. Supp. 3d at 453 (applying equitable tolling to plaintiffs' otherwise untimely takings claim).  In the out-of-Circuit cases on which Plaintiff relies to argue for equitable tolling, those plaintiffs commenced their federal court lawsuits with similar speed after *Knick* was decided.  *O'Neil v. Ca. Coastal Comm'n*, No. 19-cv-7749, 2020 WL 2522026, at *2, *6–7 (C.D. Cal. May 18, 2020) (granting equitable tolling to plaintiff who filed federal suit less than three months after *Knick* decision); *see also 4th Leaf, LLC v. City of Grayson*, 425 F. Supp. 3d 810, 815, 820–21 (E.D. Ky. 2019) (granting equitable tolling to plaintiff who filed federal court suit, prior to *Knick*, after completing state court litigation, as previously required by *Williamson County*).

The procedural history of Plaintiff's state court litigation leads the Court to conclude that Plaintiff's post-*Knick* delay in filing this case was a calculated decision—that Plaintiff waited to see whether she would prevail on her state court summary judgment motion, which was pending when the *Knick* decision was published, before deciding to file this case.  Plaintiff's papers in opposition to Defendants' motion to dismiss all but admit this; she argues that she has been reasonably diligent because she filed this case "only 4 months after the Court in the State Court Action issued its decision on the summary judgment motions."  ECF No. 38 at 28.  However, waiting to see if Plaintiff could obtain a quicker victory in one forum before deciding to pursue her rights in another is not consistent with reasonable diligence.  Plaintiff's decision to wait more than one year after *Knick* was decided to file this case, therefore, demonstrates that she is not entitled to equitable tolling.  *See Shomo v. Furco*, No. 18-cv-8523, 2020 WL 4194941, at *7 (S.D.N.Y. July 20, 2020) (holding that *pro se* plaintiff did not act with reasonable diligence

because, once allegedly extraordinary circumstances were removed, he failed to file suit within the "approximately one year remain[ing]" within the statute of limitations period).

Even if Plaintiff did not make this strategic choice, and she and her counsel had not learned about the Supreme Court's decision in *Knick* until shortly before they commenced this lawsuit, their delay still reflects a lack of the necessary diligence because "ignorance of the law is not sufficient to justify equitable tolling." *Rosenwasser v. Fordham Univ.*, 772 F. App'x 1, 3 (2d Cir. 2019) (holding that equitable tolling did not render timely *pro se* plaintiff's Section 1983 claims); *Birch v. Danzi*, No. 18-cv-839, 2018 WL 3613016, at *4 (E.D.N.Y. July 26, 2018) (holding that "delay in timely filing due to legal research" did not merit equitable tolling). Accordingly, regardless of whether Plaintiff's delay was strategic, she is not entitled to equitable tolling.

### III.   Plaintiff's Equal Protection Claim Fails Because of the Statute of Limitations and on the Merits

Plaintiff's equal protection claim is also barred by the statute of limitations because Plaintiff did not assert that claim within three years of when the Board of Appeals denied her application to build a fence across Shore Road.  Plaintiff's equal protection claim further fails on the merits because she has not adequately alleged that other property owners in the Village, who have built barriers across their private roads, are sufficiently similar to her and that the Village, therefore, had no rational basis for treating her property differently.

The statute of limitations is an even clearer bar to Plaintiff's equal protection claim than her takings claim.  The same three-year statute of limitations applies to the equal protection claim.  *Tang v. Visnauskas*, 847 F. App'x 24, 27 (2d Cir. 2021) (dismissing equal protection claim, asserted through Section 1983, as barred by three-year statute of limitations).  Plaintiff's equal protection claim accrued no later than when the Board of Appeals affirmed the building

inspector's denial of Plaintiff's fence permit on September 20, 2013. *See* ECF No. 1 ¶ 45. Plaintiff's decision to commence state court litigation shortly afterward shows that "Plaintiff[] therefore had to have been aware of [her] alleged injury" as soon as it occurred. *Bar-Mashiah v. Inc. Vill. of Hewlett Bay Park*, No. 18-cv-4633, 2019 WL 4247593, at *11 (E.D.N.Y. Sept. 6, 2019) (dismissing class-of-one equal protection claim brought more than three years after decision on zoning permit about which plaintiffs complained, which plaintiffs had already attempted to challenge in state court). Since Plaintiff did not commence her federal lawsuit within three years of September 20, 2013, her equal protection claim is time-barred.

Unlike Plaintiff's takings claim, Plaintiff cannot argue that the Supreme Court's former precedent in *Williamson County* represents an extraordinary basis for equitably tolling her equal protection claim. The Second Circuit had previously applied—and still continues to apply—the finality requirement of *Williamson County* to equal protection claims based on land use disputes, meaning that Plaintiff could not bring her claim until she received a decision from the Village about her fence application. *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002); *see also Vill. Green at Sayville, LLC v. Town of Islip*, 43 F.4th 287, 294 (2d Cir. 2022) (explaining that "[plaintiff's] takings, due process, and equal protection claims plainly must satisfy finality"). However, after holding for the first time in *Dougherty* that the finality requirement applies to equal protection claims, the Second Circuit later made clear that it "ha[d] not yet held whether [it] is appropriate" to apply *Williamson County's* separate, state court exhaustion requirement to equal protection claims. *Adrian v. Town of Yorktown*, 210 F. App'x 131, 133 n.2 (2d Cir. 2006). Neither the Court nor the parties have identified any Second Circuit decision between *Dougherty* and the Village's denial of Plaintiff's application to build a fence in which the Second Circuit held that *Williamson County's* exhaustion requirement

applied to equal protection claims based on land use disputes.  Additionally, around the time that Plaintiff received a denial from the Board of Appeals, district courts within the Second Circuit had reached a consensus interpretation that only *Williamson County's* finality requirement applied to equal protection claims.[4]

Even if Plaintiff's equal protection claim were not time-barred, it would nevertheless fail on the merits.  Since Plaintiff has not alleged that the Village denied her fence application based on her race, gender, or membership in another class of people entitled to heightened protection against discrimination, her equal protection claim is a "class of one" claim.  *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).   The Supreme Court has authorized property owners to bring such claims based on an allegedly discriminatory application of land use regulations "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Id.* "Class-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves."  *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) (affirming grant of motion to dismiss); *see also Gray Gables Corp. v. Arthur*, No. 21-1551-cv, 2022 WL 905393, at *3 (2d Cir. Mar. 29, 2022) (applying same standard and denying as futile motion to amend complaint to add equal protection claim).  To satisfy this standard, "a plaintiff must establish that (i) no rational person

---

[4]      *See, e.g.*, *Witt v. Vill. of Mamaroneck*, 992 F. Supp. 2d 350, 357 (S.D.N.Y. 2014) ("While the latter requirement is unique to the Takings Clause context, the former has since been applied to equal protection and procedural and substantive due process claims."); *Sheri Torah, Inc. v. Vill. of S. Blooming Grove*, No. 10-cv-3762, 2013 WL 1454953, at *5 (S.D.N.Y. Mar. 28, 2013) ("In the land use context, prong one of the *Williamson* ripeness test also applies to Section 1983 due process and equal protection claims."); *Roman Cath. Diocese of Rockville Centre, N.Y. v. Inc. Vill. of Old Westbury*, No. 09-cv-5195, 2012 WL 1392365, at *6 (E.D.N.Y. Apr. 23, 2012) ("The first prong of the *Williamson* ripeness test has been applied to procedural and substantive due process claims as well as equal protection claims.").

could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Ruston*, 610 F.3d at 60.  A plaintiff need not, however, allege "proof of a defendant's subjective ill will towards [the] plaintiff." *Hu v. City of New York*, 927 F.3d 81, 93 (2d Cir. 2019).

"Zoning decisions, in particular, require a stringent showing of similarity, because such decisions will often, perhaps almost always, treat one landowner differently from another." *Lepper v. Scordino*, No. 22-1064-cv, 2023 WL 4004220, at *3 (2d Cir. June 15, 2023) (affirming summary judgment dismissing plaintiff's class-of-one equal protection claim).  Accordingly, "[w]here a plaintiff challenges a zoning decision," she must "identify comparators who are similarly situated to her with regard to the zoning board's principal reasons for denying the application." *Dean v. Town of Hempstead*, 527 F. Supp. 3d 347, 432 (E.D.N.Y. 2021) (granting motion to dismiss class-of-one equal protection claim).

Plaintiff's complaint alleges in conclusory fashion that eight other properties in the Village have private roads similar to hers and have built some form of barricade to obstruct passage on those roads.  ECF No. 1 ¶¶ 25, 69.  Although Plaintiff has attached a handful of photographs depicting those properties, her complaint does not provide "specific facts showing that the comparators are similar in relevant respects to [Plaintiff's] house" and, therefore, "fail[s] to explain how those residences are like [hers]." *Lilakos v. New York City*, 808 F. App'x 4, 8 (2d Cir. 2020) (affirming grant of motion to dismiss class-of-one equal protection claims); *see also NRP Holdings LLC v. City of Buffalo*, 916 F.3d 177, 198 (2d Cir. 2019) (affirming grant of motion to dismiss class-of-one equal protection claims because plaintiff's "silences" about

"[p]otentially relevant facts" related to allegedly comparable properties "[we]re fatal to

[plaintiff's] claim").  Plaintiff's complaint is not only silent about the characteristics of those

other properties, it is also "silent as to a whole host of potential factors that could legitimately

justify [the Village's] behavior."  *Hu*, 927 F.3d at 100 (affirming grant of motion to dismiss

class-of-one equal protection claims).

Even a cursory review of the photographs Plaintiff has presented demonstrates that

Plaintiff has not met her burden of showing that no rational person could decide to treat those

properties differently from hers.  As just one example, Plaintiff concedes that the portion of the

road on which she seeks to install fences is "paved" and connects two other public roads.  ECF

No. 1 ¶¶ 23, 25.  Many of the photographs of other properties that Plaintiff has submitted,

however, show grass, dirt, or gravel paths that are not as easily traveled by vehicles, and neither

Plaintiff's complaint nor the photographs themselves indicate whether these private paths

connect two public roads, as the path outside Plaintiff's property does.  *See* ECF No. 1-11

(showing photographs of allegedly comparable properties); ECF No. 1 ¶ 35 (complaint's

conclusory allegation that several properties are comparable).  For the single paved road shown

in Plaintiff's photographs of comparable properties, *see* ECF No. 1-11 at 8, Plaintiff makes no

allegation where the property is in relation to her property or whether the allegedly private road

in the photograph connects two public roads.

Due to Plaintiff's failure to explain the characteristics of the allegedly comparable

properties, Plaintiff has failed adequately to allege that the Village had no rational basis for

concluding that Plaintiff's proposed fence, despite her proposal to install "crash gates," would

hinder emergency vehicles to a greater extent than the barriers on the purportedly comparable

properties would.  In fact, Judge Hurley previously granted a motion to dismiss class-of-one

equal protection claims brought by Plaintiff's neighbors, who owned another property on Shore Road.  *See Viteritti v. Inc. Vill. of Bayville*, 918 F. Supp. 2d 126, 135–36 (E.D.N.Y. 2013) (denying motion for leave to file proposed amended complaint).  In doing so, he held that those plaintiffs had not adequately alleged that private streets on allegedly comparable properties posed as much a hindrance to emergency vehicles as the physical barriers that plaintiffs had erected on their private street.  *Id.*  The same defect defeats Plaintiff's claims.  Based on the facts Plaintiff has alleged, and the photographs Plaintiff has presented, the Village could rationally have concluded that maintaining emergency vehicles' access to Plaintiff's paved private road, which connects two public streets, was more important than prohibiting barriers on the less-developed private paths on the allegedly comparable properties.  Plaintiff has, therefore, failed to meet her burden of alleging that the Village was irrational in concluding that her proposed fence would create "a substantial interference with the health and safety of residents."  ECF No. 1-8 at 2.

## IV.    Plaintiff's Claims Against the Individual Defendants Independently Fail

Even if Plaintiff's takings claim and equal protection claim were not dismissed in their entirety for the reasons explained above, Plaintiff's claims against all Defendants except the Village must be dismissed for independent reasons.  To start, Plaintiff has conceded that the Village's Board of Trustees and Board of Appeals "are not suable entities," and she "is not disputing" that her claims against them should be dismissed.  ECF No. 38 at 16 n.7; *see also Town & Country Adult Living, Inc. v. Vill./Town of Mount Kisco*, No. 17-cv-8586, 2019 WL 1368560, at *13 (S.D.N.Y. Mar. 26, 2019) (dismissing claims against town board of trustees because "[u]nder New York law, departments which are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and cannot sue or be sued"); *Highview*, 606 F. Supp. 3d at 26 (dismissing claims against town board for same

reason).  The Court therefore dismisses Plaintiff's claims against those entities with prejudice for this additional reason.

Plaintiff's claims against the unidentified "Doe" members of the Board of Appeals must be dismissed because the members of that board are entitled to absolute immunity for their participation in the Board's decisions.  "The New York Court of Appeals has expressly stated that 'a zoning board of appeals performs a quasi-judicial function when considering applications for variances and special exceptions.'"  *Dean*, 527 F. Supp. 3d at 411 (quoting *Knight v. Amelkin*, 503 N.E.2d 106, 106 (N.Y. 1986)).  Members of a zoning board are, therefore, entitled to "absolute immunity" if they "acted in their official capacity and are sued based on their quasi-judicial functions."  *Id.* at 412.  Plaintiff has identified no improper action that the unidentified members of the Board of Appeals allegedly performed other than denying her application to install a fence, *see* ECF No. 1 ¶ 14, so her claims against them are precluded by their immunity.  Since Defendant Goolsby, the Village's former building inspector, is being sued solely because of his decision on Plaintiff's application to build a fence, which triggered Plaintiff's appeal to the Board of Appeals, he is also entitled to absolute immunity.  *Dean*, 527 F. Supp. 3d at 412 (dismissing claims against "commissioner of the Department of Buildings" because "his determinations on [p]laintiffs' applications" were "act[s] which a building inspector must perform as part of his responsibilities").

Plaintiff's claims against the remaining individual Defendants are precluded by the absolute immunity held by local legislators.  "The Supreme Court has determined that, under the common law, state and local government officials" have a protection analogous to that afforded by members of Congress under the Constitution's Speech or Debate Clause and, therefore, "enjoy absolute immunity against federal civil claims asserted against them in their individual

capacities for equivalent legislative activity." *NRP Holdings*, 916 F.3d at 190 (citing *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998)). Plaintiff's complaint does not attempt to explain exactly how the members of the Village's Board of Trustees have violated her rights. *See* ECF No. 1. However, the only conceivable ground for Plaintiff's claims is the trustees' approval of any decisions by the Board of Trustees as a whole, made on behalf of the Village, to connect a public road to Plaintiff's formerly "private path." ECF No. 1 ¶¶ 21, 23, 26–27 (describing Village Board of Trustees' resolutions and amendments to Village Code). Such actions fall squarely within the scope of legislative immunity. *Bloomingburg Jewish Educ. Ctr. v. Vill. of Bloomingburg, N.Y.*, 111 F. Supp. 3d 459, 492 (S.D.N.Y. 2015) (holding that individual defendants were entitled to legislative immunity from Section 1983 claims based on votes individual defendants "cast as members of the Village Board of Trustees"); *Cent. UTA of Monsey v. Vill. of Airmont, N.Y.*, No. 18-cv-11103, 2020 WL 377706, at *21 (S.D.N.Y. Jan. 23, 2020) (holding that "members of the [Village] Board of Trustees are entitled to legislative immunity for their votes").

Legislative immunity also applies to Plaintiff's claims against Defendant Rupp, one of the Village's former mayors. "[O]fficials outside the legislative branch may be entitled to legislative immunity when they perform legislative functions." *NRP Holdings*, 916 F.3d at 191. For example, even though a mayor is a town's chief executive, a mayor may be entitled to legislative immunity for any legislative functions that he or she performs because legislative immunity "attaches to particular types of *conduct*, not to particular *job titles*." *Id.* (emphasis in original); *see also Scheiner v. Bloomberg*, No. 08-cv-9072, 2009 WL 691449, at *2 (S.D.N.Y. Mar. 17, 2009) (dismissing Section 1983 claims and holding that mayor's act of signing into law measure passed by city council was a legislative act protected by legislative immunity).

23

Plaintiff's complaint alleges no actions performed by Defendant Rupp.  *See* ECF No. 1.  The only document attached to Plaintiff's complaint that involves Defendant Rupp reflects that he voted in favor of a 2015 resolution by the Village's Board of Trustees, which supported improving one of the public streets that connects to Plaintiff's private road.  ECF No. 1-6; *see also* N.Y. Vill. L. § 4-400(1)(a) (authorizing a village mayor to "vote upon all matters and questions coming before the board [of trustees]").  Such an action falls squarely within the scope of legislative immunity.  *See NRP Holdings*, 916 F.3d at 193 (holding that mayor was entitled to legislative immunity for "decision not to introduce the resolutions for Common Council action").

Plaintiff's claims against Defendant De Natale, the other former mayor named in Plaintiff's complaint, also must be dismissed.  Neither Plaintiff's complaint nor any of the documents she attached to her complaint suggest that Defendant De Natale personally played any role in the actions giving rise to Plaintiff's claims.  This failure alone is enough to dismiss Plaintiff's claims against Defendant De Natale because a plaintiff asserting a Section 1983 claim must prove "that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020).  Put another way, "there is no special rule for supervisory liability" that permits Plaintiff to assert claims against the Village's former mayors based purely on their supervisory status.  *Id.*

Plaintiff has attached to her opposition to Defendants' motion to dismiss an email that Plaintiff's husband sent to Defendant De Natale, attempting to negotiate a settlement of Plaintiff's state court lawsuit.  ECF No. 38-15.  Plaintiff is not permitted to amend her complaint through facts provided for the first time in opposing a motion to dismiss, and this email would be an improper means of demonstrating De Natale's role in the alleged violations of Plaintiff's constitutional rights for that reason alone.  *See JBrick, LLC v. Chazak Kinder, Inc.*, No. 21-cv-

24

2883, 2022 WL 17177854, at *4 n.3 (E.D.N.Y. Nov. 23, 2022) ("[I]t is well-settled that a

plaintiff cannot amend [her] complaint by asserting new facts or theories for the first time in

opposition to a motion to dismiss."); *Palm Beach Mar. Museum, Inc. v. Hapoalim Secs. USA,

Inc.*, 810 F. App'x 17, 20 (2d Cir. 2020) (affirming dismissal "because a complaint may not be

amended by advocating a different theory of liability in an opposition brief wholly unsupported

by factual allegations in the complaint").

Even if the Court were to consider the email, however, the version of the email provided

by Plaintiff contains no indication that Defendant De Natale ever responded, *see* ECF No. 38-15,

and Plaintiff alleges that he "refused to entertain this dialogue" rather than respond, *see* ECF No.

38 at 18.  But Defendant De Natale's purported failure to stop the Village's alleged constitutional

violations after receiving a single message from Plaintiff is not sufficient to demonstrate his

personal involvement.  *Malek v. N.Y. Unified Ct. Sys.*, No. 22-cv-5416, 2023 WL 2429528, at

*13 (E.D.N.Y. Mar. 9, 2023) (dismissing Section 1983 claims because plaintiff's allegations that

certain defendants ignored his inquiries about pending litigation and refused to exercise their

supposed power to settle or dismiss that litigation did not amount to personal participation in

alleged constitutional violations); *Smart v. Annucci*, No. 19-cv-7908, 2021 WL 260105, at *5

(S.D.N.Y. Jan. 26, 2021) (dismissing Section 1983 claims against supervisory officials based on

plaintiff's allegations that "she informed them about" constitutional violations committed by

others and they "[f]ail[ed] to correct" those violations); *Cent. UTA of Monsey*, 2020 WL 377706,

at *23 (dismissing Section 1983 claims against village treasurer because "the only allegation

against her is that she was copied on an email"); *Capogrosso v. Gelbstein*, No. 18-cv-2710, 2019

WL 4686448, at *8 (E.D.N.Y. Sept. 25, 2019) (dismissing Section 1983 claims against

supervisory defendant because allegation that defendant "failed to respond to Plaintiff's written

complaint" was inadequate to demonstrate personal involvement).  Accordingly, Plaintiff's

claims against Defendant De Natale must be dismissed along with her claims against the

remaining individual Defendants.

Finally, Plaintiff purports to sue all of the individual Defendants in their official

capacities, in addition to the handful of Defendants that she is suing in their individual capacities.

ECF No. 1.[5]  However, when municipal officials are sued in their official capacities, "the real

party in interest" is the municipality.  *Schubert v. City of Rye*, 775 F. Supp. 2d 689, 700

(S.D.N.Y. 2011) (dismissing "the official-capacity suits against the Mayor, the City Council, and

the members thereof").  The official capacity claims against the individual Defendants must

therefore be dismissed.  *Highview*, 606 F. Supp. 3d at 26–27 (dismissing "official capacity

claims against individual [t]own employees" for same reason).

### V.     The Court Declines to Grant Leave to Amend

Although the Second Circuit "strongly favors liberal grant of an opportunity to replead

after dismissal of a complaint under Rule 12(b)(6)," the Court declines to grant Plaintiff leave to

amend.  *Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 107 (2d Cir. 2022) (affirming denial of

leave to amend).  "A court should freely give leave when justice so requires, but it may, in its

discretion, deny leave to amend for good reason, including futility, bad faith, undue delay, or

undue prejudice to the opposing party."  *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*,

66 F.4th 77, 90 (2d Cir. 2023) (affirming denial of leave to amend).  "Futility is a determination,

as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a

---

[5]     The caption of Plaintiff's complaint indicates that she is bringing individual capacity claims against only former mayors De Natale and Rupp, former building inspector Goolsby, current Village Board of Trustees members Nigro and Valsecchi, and former trustee Russo.  ECF No. 1 at 1.  The remainder of Plaintiff's complaint makes no effort to explain why she singled out these Defendants to sue in their individual capacities or what actions they took in their individual capacities that violated Plaintiff's constitutional rights.  *See* ECF No. 1.

claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *In re Tribune Co. Fraudulent Conv. Litig.*, 10 F.4th 147, 175 (2d Cir. 2021) (affirming denial of leave to amend).

The fact that Plaintiff has not requested leave to amend in her opposition to Defendant's motion to dismiss is reason enough not to grant leave. *See Hu*, 927 F.3d at 107 (affirming dismissal with prejudice because "no court can be said to have erred in failing to grant a request that was not made" and district court was permitted to "declin[e] to *sua sponte* grant leave to amend"). Leave to amend would also be futile because Plaintiff's claims would still be barred by the statute of limitations. *See Kane*, 2023 WL 5281533, at *7 (affirming denial of leave to amend to add new facts about merits of plaintiff's claims because "[s]uch an amendment would not cure the fact that [plaintiff's] claims are time barred"). Accordingly, Plaintiff's claims would still fail even if she could amend her complaint to allege additional facts that attempt to address the merits-based deficiencies described in this order, such as facts illustrating:  (a) why other Village residents' purportedly comparable properties are sufficiently similar to Plaintiff's property; (b) how particular individual Defendants personally participated in the Village's alleged constitutional violations; or (c) what actions the individual Defendants may have taken outside of the scope of their legislative and quasi-judicial immunities.

## CONCLUSION

For the reasons set forth above, the Court GRANTS Plaintiff's request to terminate the stay of this case. *See* ECF No. 38.  However, the Court also GRANTS Defendants' motion to

dismiss Plaintiff's claims in their entirety and with prejudice.  *See* ECF No. 37.  The Clerk of

Court is respectfully directed to enter judgment in favor of Defendants and to close this case.

SO ORDERED.

_/s/ Hector Gonzalez_____
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
September 25, 2023